DAISY B. MITCHELL, Appellee, v. MONTGOMERY WARD & COMPANY, Appellant.

No. 44523.

APRIL 5, 1939.

Hollingsworth & Hollingsworth, for appellant.

E. W. McManus, for appellee.

RICHARDS, J.—On October 23, 1935, defendant was engaged in retail merchandising in the city of Keokuk. During the noon hour of that day plaintiff and her daughter entered defendant's place of business "just shopping, looking around," and ascended a stairway to a second floor room where linoleum rugs were kept on display and for sale. The rugs had been placed on end in a manner that need not be detailed. One of the rugs, 9x12 feet in size and weighing about 38 pounds, toppled over and struck plaintiff a glancing blow on her head and shoulder. She seeks damages in this action, claiming that the blow caused "traumatic neurosis". There is also reference in the testimony of her expert witnesses to "traumatic psychoneurosis". There was a verdict for plaintiff and a judgment rendered thereon. Defendant has appealed.

The case was tried on the theory that plaintiff was defendant's invitee to the premises. Plaintiff claimed that in several respects the defendant failed in its duty to be reasonably sure that it was not inviting plaintiff into a place of danger and in its duty to make the premises reasonably safe for the visit.

One of the matters plaintiff sought to prove was the extent of her alleged injuries. Relative thereto she offered the testimony of an expert witness, Dr. Holmes, a physician who at no time treated plaintiff. Appellant urges the court erred in overruling objections to the testimony of this witness and we are constrained to hold that there was such error and that it was prejudicial. The record reveals that a week or 10 days before the trial, it then being nearly a year since the alleged injuries, this witness made two physical examinations of plaintiff, whom he had never known. Thereafter, as plaintiff's expert witness he was asked two hypothetical questions. But pre-

ceding these questions, and to furnish a foundation, the witness related in detail what plaintiff told him during the physical examinations. Among other things, this witness testified that plaintiff told him she had sustained an injury in defendant's store, and the witness related what plaintiff told him was the manner in which the accident happened. He also testified that plaintiff described to him her condition of health before the injury, and told him that following the injury she had not seen a well day, had never been free from pain, that it was always there, that she was easily exhausted, that she could not sleep, that her appetite was disturbed, that she mentioned dizzy spells, and said she had nausea for no special reason. This testimony was directly elicited by plaintiff's counsel and was admitted over defendant's objections that the questions called for hearsay testimony and for self-serving statements on the part of the plaintiff, statements that were self-serving so far as plaintiff was concerned. In making his answers to each of the subsequent hypothetical questions the witness assumed that these things plaintiff told him were true. The witness testified also that when he physically examined plaintiff the expression of her face and the muscle response to touch were such that he felt she was suffering from pain. In response to the first hypothetical question the witness expressed as follows his opinion concerning the condition of plaintiff at a time of the trial,— "I think she is suffering from neurosis." In answering the second hypothetical question the witness testified that in his opinion the neurosis was precipitated by a trauma, and that the trauma was one plaintiff complains of or stated happened in October 1936 at Montgomery Wards. In answer to each hypothetical question, in addition to what plaintiff told him, the witness also took into consideration the physical examination he had made.

"As a general rule the law excludes all mediate or hearsay evidence, of mere hearsay declarations, made to those who are sworn and examined." The controlling reason for its rejection is that it cannot be subjected to the ordinary tests which the law has provided for the ascertainment of truth—the obligation of an oath, and cross-examination, things which the law in ordinary cases invariably requires. Ibbitson v. Brown, 5 Iowa 531. For certain purposes an exception to this rule has been recognized in favor of the testimony of a physician repeating statements of a patient concerning the history of his

ailment, when the statements have been made in the course of treatment. State v. Blydenburg, 135 Iowa 264, 112 N. W. 634, 14 Ann. Cas. 443. The courts sense a probability that the patient will not falsify in statements made to his physician at a time when he is expecting and hoping to receive from him medical aid and benefit. But no such presumption can be indulged, and such testimony is not admissible, according to the great weight of authority, when the patient, having become a litigant, causes himself to be examined by a physician for the purpose of the latter giving evidence in a case about to be tried. Shaughnessy v. Holt, 236 Ill. 485, 86 N. E. 256, 21 L. R. A. (N. S.) 826; Union Pacific Ry. Co. v. McMican, 8 Cir., 194 F. 393; U. S. v. Nickle, 8 Cir., 60 F. 2d 372. Were such testimony permitted an easy way would be opened for putting before the jury any quantity of self-serving ex parte statements. The only technique needed would be the engaging of the services of an expert witness. Kath v. Wisconsin Central R. Co., 121 Wis. 503, 99 N. W. 217. In the Blydenburg case, supra, it was stated that the exception we have described is undoubtedly one to be applied with care to see that it is not unduly extended, although within its limits it is a valuable aid in the discovery of truth. In Switzer v. Baker, 178 Iowa 1063, 160 N. W. 372, a physician was called in by a litigant for the purpose of enabling the latter to testify in her behalf. The physician was a stranger to plaintiff, had never treated her professionally, and made no examination except to question her in regard to her past and present condition and to obtain the reports or statements made by others concerning such conditions. It was held that his expert opinion concerning plaintiff's ailment, because based wholly or in part on such information, was not competent evidence. Because some members of the court were of the opinion that a medical expert may properly testify to his diagnosis based upon the history of the case as made to him by the patient, and as it was not necessary to determine that question because the expert drew his conclusions in part from information derived from persons other than the plaintiff, the conclusion of the court was limited to the latter fact. However in that case there is cited the holding in Coburn v. Moline E. M. & W. R. Co., 243 Ill. 448, 90 N. E. 741, 134 Am. St. Rep. 377, that "The opinion of the physician is not competent evidence where it is based upon self-serving statements by the

960

patient, not made in the course of treatment, but with a view of enabling the physician to testify in reference to the physical condition of the patient.'' [178 Iowa 1075, 160 N. W. 376.] It should also be said that in the Switzer case the expert did not relate in the presence of the jury the content of the statements made by plaintiff nor of the reports or statements made by others, whereas in the instant case the witness was permitted to relate to the jury the things plaintiff told him, though at the time defendant was making proper objections thereto. No well considered authority has been called to our attention that would sustain the overruling of these objections. The statements had not been made by plaintiff in course of treatment by the witness. The testimony was hearsay and self-serving and not within the exception to the rule. There was likewise error in overruling the objections to the hypothetical questions, based as they were, at least in part, upon incompetent testimony. The errors were prejudicial and the judgment must be and is reversed. We deem it unnecessary that other assignments of error be discussed.—Reversed.

BLISS, MILLER, OLIVER, HALE, STIGER, and HAMILTON, JJ., concur.